**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**TINA DEPASQUALE,**

                              **Plaintiff,**

**v.**

                                                          **18-CV-1500(HKS)**

**COMMISSIONER OF SOCIAL SECURITY,**

                              **Defendant.**

---

## DECISION AND ORDER

        Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct any and all further proceedings in this case, including entry of final judgment.  Dkt. No. 17.  Tina DePasquale ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for benefits.  This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).  Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  Dkt. Nos. 11, 15.  For the following reasons, Plaintiff's motion (Dkt. No. 11) is denied, and the Commissioner's motion (Dkt. No. 15) is granted.

## BACKGROUND

        On April 6, 2015, Plaintiff protectively filed for Disability Insurance Benefits ("DIB"), alleging disability beginning on June 1, 2013, due to fibromyalgia, Hepatitis C, acid reflux, chronic obstructive pulmonary disease ("COPD"), hiatal hernia, headaches, hand numbness, anxiety, and post-traumatic stress disorder ("PTSD").  Tr. at 143, 168,

205.[1]  Plaintiff's application was denied at the initial level and she requested review.  Tr.

at 75-86, 88.  Administrative Law Judge Roxanne Fuller ("the ALJ") conducted a hearing

on July 10, 2017.  Tr. at 38-59.  Plaintiff, who was represented by counsel, testified as

well as an impartial vocational expert.  Tr. at 39-54, 54-59.  On November 14, 2017, the

ALJ issued a decision in which she found that Plaintiff was not disabled and therefore,

not eligible for benefits.  Tr. at 14-31.  The Appeals Council denied Plaintiff's request for

review, making the ALJ's determination the final decision of the Commissioner.  Tr. at 1-

6.  Plaintiff thereafter commenced this action seeking review of the Commissioner's

decision.  Dkt. No. 1.


## LEGAL STANDARD

**Disability Determination**

An ALJ must follow a five-step process to determine whether an individual

is disabled under the Act.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987).  At step

one, the ALJ must determine whether the claimant is engaged in substantial gainful work

activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ

proceeds to step two and determines whether the claimant has an impairment, or

combination of impairments, that is "severe," meaning that it imposes significant

restrictions on the claimant's ability to perform basic work activities.  20 C.F.R. §

404.1520(c).  If the claimant does not have a severe impairment or combination of

---

[1]Citations to "Tr. __" refer to the pages of the administrative transcript, which appears at Docket
No. 7.

impairments, the analysis concludes with a finding of "not disabled."  If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  20 C.F.R. § 404.1520(d).  If the impairment meets or medically equals a Listings criterion and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work.  20 C.F.R. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If not, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

3

**District Court Review**

42 U.S.C. § 405(g) authorizes a district court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). Section 405(g) limits the scope of the Court's review to two inquiries: whether the Commissioner's conclusions were based upon an erroneous legal standard, and whether the Commissioner's findings were supported by substantial evidence in the record as a whole. *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-106 (2d Cir. 2003). Substantial evidence is "more than a mere scintilla." *Moran v. Astrue,* 569 F.3d 108, 112 (2d Cir. 2009). "It means such *relevant* evidence as a *reasonable* mind might accept as adequate to support a conclusion." *Id.* (emphasis added and citation omitted). The substantial evidence standard of review is a very deferential standard, even more so than the "clearly erroneous" standard. *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 447-48 (2d Cir. 2012) (citing *Dickinson v. Zurko,* 527 U.S. 150, 153 (1999)).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). If there is substantial evidence for the ALJ's determination, the decision must be upheld, even if there is also substantial evidence for the Plaintiff's position. *See Perez v. Chater,* 77 F.3d 41, 46-47 (2d Cir. 1996); *Conlin ex*

*rel. N.T.C.B. v. Colvin*, 111 F. Supp. 3d 376, 384 (W.D.N.Y. 2015).  Likewise, where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## DISCUSSION AND ANALYSIS

**The ALJ's Decision**

The ALJ analyzed Plaintiff's claims using the familiar five-step process described above.  *Lynch v. Astrue*, No. 07-CV-249, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps).  At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity from June 1, 2013, her alleged onset date, through her date last insured, December 31, 2016.  Tr. at 20.  At step two, she found that Plaintiff had the following severe impairments:  fibromyalgia and COPD.  Tr. at 20-23.[2]  The ALJ concluded that Plaintiff had mental impairments of bipolar disorder and PTSD but that they were non-severe, noting that:  with medication, Plaintiff was able to maintain a stable mood and improved relationships and exhibited normal mood and affect over the relevant period; and the State Psychiatric Consultant, S. Juriga, Ph.D., found that Plaintiff had no severe mental impairments.  Tr. at 20-22, 60-69.  The ALJ acknowledged that Plaintiff was hospitalized for 5 days for agitated behavior in January 2017, after her date last insured, but noted that her condition resulted directly from her non-compliance with her mood disorder and pain medications.  Tr. at 21-22, 325.

---

[2] This Court presumes the parties' familiarity with plaintiff's medical history, which is detailed at length in the papers.

At step three, the ALJ concluded that Plaintiff's impairments did not, either individually or in combination, meet or equal the Listings, giving special consideration to Listing 1.00 (Musculoskeletal Systems), 3.0 (Respiratory Disorders) including 3.02 (Chronic Respiratory Disorders), 12.04 (Depressive Bipolar and Related Disorders), and 12.06 (Anxiety and Obsessive-Compulsive Disorders), as well as Social Security Ruling 12-2p (Fibromyalgia).  Tr. at 17.  Next, the ALJ found that Plaintiff retained the RFC to perform light work as defined by 20 C.F.R. § 404.1567(b), except "frequent overhead reaching with the right dominant hand; occasional exposure to extreme cold, extreme heat, wetness or humidity; occasional exposure to irritants such as fumes, odors, dusts and gases; occasional exposure to poorly ventilated areas; and occasional exposure to chemicals."  Tr. at 24-29.

Continuing to the fourth step, the ALJ found that Plaintiff was able to perform her past relevant work as a retail customer service clerk and collection clerk.  Tr. at 29.  She made the alternative finding that based on Plaintiff's age (48 years old), education (at least a high school education), and with the aforementioned RFC, Plaintiff could perform work that exists in significant numbers in the national economy, specifically, the jobs of small products assembler (DOT No. 706.684-022), and sorter (DOT No. 209.687-026).  Tr. at 30.  In yet another alternative holding, the ALJ concluded that even if Plaintiff was limited to the sedentary exertional level, she could perform the jobs of addresser (DOT 209.587-010), assembler (DOT 734.687-058), and inspector (DOT 734.687-042), which exist in significant numbers in the national economy.  Tr. at

30-31.  Accordingly, concluded the ALJ, Plaintiff was not under a disability from June 1,

2013, through December 31, 2016, the date last insured.  Tr. at 31.


**Judgment on the Pleadings**

As noted above, the parties have cross-moved for judgment on the

pleadings.  Dkt. Nos. 11, 15.  Plaintiff contends that the ALJ committed reversible error by

finding Plaintiff's mental health impairments non-severe at step two (Dkt. No. 11-1, pp. 7-

11), and improperly gave only partial weight to the opinion of the consulting psychiatrist,

Dr. Gregory Fabiano, that Plaintiff had "moderate" limitations in her ability to deal with

stress (Dkt. No. 11-1, pp. 12-14).  The Commissioner contends that the ALJ reasonably

assessed the severity of Plaintiff's impairments through the date last insured (Dkt. No.

15-1, pp. 9-13), and properly assigned only partial weight to Dr. Fabiano's "moderate

limitation" opinion, because it was inconsistent with his objective findings and with other

evidence in the record (Dkt. No. 15-1, pp. 13-19).  Having reviewed the record, this Court

finds that the ALJ did not err and that the RFC was substantially supported.


**The ALJ's Alleged Step Two Error**

At step two of the disability analysis, the ALJ must determine whether the

plaintiff has a severe impairment that significantly limits his or her physical or mental

ability to do basic work activities.  20 C.F.R. § 404.1520(c).  "The claimant bears the

burden of presenting evidence establishing severity."  *Taylor v. Astrue,* 32 F. Supp. 3d

253, 265 (N.D.N.Y. 2012), *adopted,* 32 F. Supp. 3d 253 (N.D.N.Y. 2012).  The step two

severity standard "is *de minimis* and is meant only to screen out the weakest of claims."

*Dixon v. Shalala,* 54 F.3d 1019, 1030 (2d Cir. 1995).  At the same time, the "'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition 'severe.'"  *Taylor,* 32 F. Supp. 3d at 265 (quoting *Coleman v. Shalala,* 895 F. Supp. 50, 53 (S.D.N.Y. 1995)).  Rather, "to be considered severe, an impairment or combination of impairments must cause 'more than minimal limitations in [a claimant's] ability to perform work-related functions.'"  *Windom v. Berryhill,* No. 6:17-cv-06720-MAT, 2018 WL 4960491, at *3 (W.D.N.Y. Oct. 14, 2018) (quoting *Donahue v. Colvin*, No. 6:17-CV-06838(MAT), 2018 WL 2354986, at *5 (W.D.N.Y. May 24, 2018)).

Having reviewed the record in its entirety, this Court finds that the ALJ did not err in finding that Plaintiff's bipolar disorder and PTSD were non-severe.  As an initial matter, the record shows that Plaintiff was able to work as a collections clerk, despite having been diagnosed with bipolar and PTSD, and that she only stopped working because "the business folded" and she "had back pain."  Tr. at 55, 146-53, 170, 193-200, 312.  From June 1, 2013, through December 31, 2016, Plaintiff's treatment for her mental impairments was limited to medication from her primary care physician, Nirisha Kalakada, MD.  Tr. at 225-31, 234-37.  This dearth of treatment supports the ALJ's finding that Plaintiff's mental impairments were not severe.  *Diaz-Sanchez v. Berryhill*, 295 F. Supp. 3d 302, 306 (W.D.N.Y. 2018) (reasoning that "[w]here . . . a claimant has sought little-to-no treatment for an allegedly disabling condition, his inaction may appropriately be construed as evidence that the condition did not pose serious limitations); *see also Arnone v. Bowen*, 882 F.2d 34, 39 (2d Cir. 1989) (stating that a lack of evidence that

claimant sought medical attention may not preclude a finding of disability, but it does "seriously undermine" a disability claim); *Gagnon v. Commissioner*, 14-CV-1194(GLS), 2016 WL 482068, at *6 (N.D.N.Y. Feb. 5, 2016) (holding that plaintiff's subjective complaints of anxiety and social phobia were "undercut" by her sporadic medical treatment for those alleged impairments); *Talbot v. Colvin*, 14-CV-879(GLS), 2016 WL 320156, at *2-3 (N.D.N.Y. Jan. 26, 2016) (holding that ALJ appropriately rejected physician's opinion that plaintiff was severely limited by depression, where plaintiff never sought mental health counseling).

Moreover, Plaintiff did not exhibit signs of mania, depression, or PTSD during her medical examinations during the relevant time period.  As the ALJ noted (Tr. at 21), Plaintiff reported to Dr. Kalakada in September 2013, that despite being stressed out due to a recent move, her mood was "pretty good."  Tr. at 234.  Plaintiff denied feeling down or depressed, or having difficulty concentrating, poor appetite, or lack of interest in activities.  Tr. at 235-36.  Dr. Kalakada found that Plaintiff was alert and oriented and had an appropriate mood and affect.  Tr. at 236.  During a May 2014 exam with Dr. Kalakada, Plaintiff once again affirmed that that she had no issues with depression or irritability.  Tr. at 228.  Dr. Kalakada noted that Plaintiff had no psychiatric complaints, and was "negative" for anxiety, depression, and suicidal ideations.  Tr. at 229-30.  The doctor found that once again, Plaintiff was alert and oriented and had an appropriate mood and affect.  Tr. at 230.  Dr. Kalakada made these same findings when she examined Plaintiff in December 2014.  Tr. at 226.

Admitting that "there is not voluminous evidence from the relevant time period" (Dkt. No. 11-1, p. 8), Plaintiff cites to evidence outside of the period between her onset date and her date last insured as proof that she is more limited mentally than the ALJ found.  However, it is clear from her decision that the ALJ considered all of this evidence, including Plaintiff's hospitalization, which occurred after her date last insured, and found that it did not support a finding of disability.  The ALJ accurately noted that the behavior that led to Plaintiff's hospitalization was, according to her doctors, directly attributable to Plaintiff's refusal to take Tegretol and Cymbalta for mood stabilization and pain.  Tr. at 20-21, 325.

It should be noted that the ALJ's analysis of Plaintiff's mental health symptoms was lengthy and exhaustive.  Despite finding that Plaintiff's bipolar disorder and PTSD were non-severe impairments, the ALJ nonetheless considered whether the "Paragraph B" criteria were satisfied, that is, whether Plaintiff had at least one extreme or two marked limitations in the broad areas of functioning (understanding, remembering, and applying information; interacting with others; concentrating and persisting, or maintaining pace; and adapting and managing oneself).  Tr. at 22.  Citing to Plaintiff's own testimony and the psychiatric examination of Dr. Gregory Fabiano, the ALJ concluded that Plaintiff had a moderate limitation in only one area (concentrating, persisting and maintaining pace); a mild limitation in two areas, and no limitation in yet another.  Because Plaintiff's functional mental health limitations did not meet the "Paragraph B" criteria, it was appropriate for the ALJ to deem her bipolar and PTSD as non-severe.  *See* Listing 12.04; Listing 12.15.

10

Even if the ALJ erred in finding that Plaintiff's mental impairments were non-severe at Step 2, any such error is harmless because the jobs identified by the ALJ require little to no judgment and do not require significant interaction with others.[3]  As previously noted herein, the ALJ alternatively found at Step 5 that Plaintiff could perform the unskilled light jobs of small products assembler, checker, and sorter, and the unskilled sedentary jobs of addresser, assembler, and inspector.  "Unskilled work is work which requires little or no judgment to do simple duties that can be learned on the job in a short period of time" and requires little vocational preparation.  20 C.F.R. § 404.1568. Unskilled jobs "ordinarily involve dealing primarily with objects, rather than data or people," and "they generally provide substantial vocational opportunities for person[s] with solely mental impairments who retain the capacity to meet the intellectual and emotional demands of such jobs on a sustained basis."  Social Security Ruling (SSR) 85-15, 1985 WL 56857, at *4; *see also* DOT Nos. 209.587-010, 1991 WL 671797; 209.687-026, 1991 WL 671813; 221.587-018, 1991 WL 672053; 706.684-022, 1991 WL 679956; 734.687-058, 1991 WL 679960 (DOT notes that the jobs identified by the ALJ require no

---

[3] Any alleged error is harmless for yet another reason. "[W]hen an administrative law judge identifies some severe impairments at [s]tep [two], and then proceeds through [the] sequential evaluation on the basis of [the] combined effects of all impairments, including those erroneously found to be non[-]severe, an[y] error in failing to identify all severe impairments at [s]tep [two] is harmless."  *Snyder v. Colvin,* No. 5:13-CV-585 GLS/ESH, 2014 WL 3107962, at *5 (N.D.N.Y. July 8, 2014) ("[W]hen [the] functional effects of impairments erroneously determined to be non-severe at [s]tep [two] are, nonetheless, fully considered and factored into subsequent residual functional capacity assessments, a reviewing court can confidently conclude that the same result would have been reached absent the error."); *see also Reices-Colon v. Astrue,* 523 F. App'x 796, 798 (2d Cir. 2013) (holding that the ALJ's step two error was harmless where all of the claimant's conditions "were considered during the subsequent steps"); *Panfil v. Comm'r of Soc. Sec.*, No. 16-CV-947-MJR, 2018 WL 4610531, at *4 (W.D.N.Y. Sept. 26, 2018) ("To the extent the ALJ erred in not including occipital neuralgia, myofascial pain, cervicalgia, and personality disorder in his list of severe impairments, the error was harmless because the ALJ proceeded beyond step two and considered these impairments at the remaining steps.").

significant taking of instructions or helping others).  In this regard, any arguable

deficiency in the ALJ's Step 2 finding is therefore, harmless and does not affect the

outcome of the case.  *Shinseki v. Saunders*, 556 U.S. 396, 409 (2009) (the burden of

showing that an error is harmful normally falls on the party attacking the agency's

determination"); *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (finding harmless

error where the ALJ's consideration of a doctor's report would not have changed the

ALJ's adverse determination).  Accordingly, Plaintiff's request for a remand on this basis

is denied.


**The ALJ's Rejection of the Treating Physicians' Disability Opinions**

Plaintiff argues that the ALJ improperly attributed only partial weight to the

opinion of consulting examiner Dr. Fabiano that Plaintiff had a "moderate limitation" in her

ability to deal with stress, and offered only conclusory reasoning for doing so.  Dkt. No.

11-1, pp. 12-14.  This Court does not agree.  It bears noting here that Dr. Fabiano did

examine Plaintiff and offer an opinion as to her mental limitations, but was not a treating

physician.  In this regard, his opinion was not entitled to "controlling weight."  *Burgess v.

Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)).

Nonetheless, the ALJ offered several "good reasons for not crediting the opinion[,]"

*Burgess*, 537 F.3d at 129 (quotation marks omitted), that were "supported by [specific]

evidence in the case record."  *McCarthy v. Colvin*, 66 F. Supp. 3d 315, 323 (W.D.N.Y.

2014) (quotation marks and citations omitted).

12

First, the ALJ noted that the evidence as a whole did not establish the presence of moderate limitations, either in dealing with stress or any other psychiatric issue.  Tr. at 22.  Citing to Dr. Kalakada's and her post-insured hospital records, Tr. at 22, 221, 225, the ALJ noted that Plaintiff had been able to "manage her mood effectively with only the use of medication" and that her recent hospital admission "appears to have occurred only after the claimant began to demonstrate noncompliance with treatment." Tr. at 22. The ALJ cited at length the records from Plaintiff's treating physician which "consistently showed a normal mood and affect."  Dkt. No. 21.  The ALJ also recognized that Dr. Fabiano's own exam findings did not support a "marked" limitation in that:  he found that Plaintiff had a euthymic mood, and full range of affect with only mildly impaired attention and concentration; Plaintiff reported that she did not have any symptoms of mania or thought disorder, or any clinical levels of PTSD or depressive symptoms; she could manage her own personal care and could complete household chores; and Plaintiff had "pretty good" relationships with others.  Tr. at 21.

Based on the foregoing, this Court finds that the ALJ did not err in declining to give controlling weight to Dr. Fabiano's opinion, as it was inconsistent with the record as a whole and with Dr. Fabiano's contemporaneous medical findings.  It is, in fact, the role of the ALJ to compare specific medical opinions against the record as a whole, and to reject those opinions that are inconsistent with the evidence.  20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4); *see also Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7-8 (2d Cir. 2017) (holding that the ALJ did not violate the "treating physician" rule, where ALJ determined that the treating doctor's treatment notes often stated that the claimant's

13

mood was "stable" or "good," contradicting the doctor's restrictive RFC assessment). Given that Plaintiff's objective mental examinations were largely unremarkable and her treatment history sparse, this Court finds that the ALJ properly evaluated Dr. Fabiano's "moderate" stress limitation opinion. *Overstreet v. Berryhill*, 335 F. Supp. 3d 500, 504 (W.D.N.Y. 2018) (holding that Plaintiff's largely unremarkable physical and mental examination findings and conservative treatment history were relevant factors in determining whether she was disabled); *Newell v. Colvin*, No. 15-CV-6262P, 2016 WL 4524809, at *14 (W.D.N.Y. Aug. 30, 2016) (holding that the ALJ appropriately declined to give great weight to a portion of the treating physician's opinion, which the ALJ found to be inconsistent with the doctor's examination findings and other information in the record).

This Court finds that the record contains a complete medical history, with no obvious gaps, and that substantial evidence supports the RFC. Plaintiff clearly disagrees with the ALJ's evaluation of the evidence. However, the substantial evidence standard is so deferential that "there could be two contrary rulings on the same record and both may be affirmed as supported by substantial evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 127 (2d Cir. 2012). That is, "once an ALJ finds the facts, [a reviewing court] can reject those facts only if a reasonable factfinder would have to conclude otherwise." *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). This case does not present such a situation. For all of the foregoing reasons, this Court finds that the ALJ's decision is free from legal error and is supported by substantial evidence.

## CONCLUSION

For the reasons stated herein, Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is hereby DENIED, and the Commissioner's motion for Judgment on the pleadings (Dkt. No. 15) is GRANTED.  The Clerk of the Court is directed to close this case.


**SO ORDERED.**


DATED:      Buffalo, New York
            July 7, 2020


                                    *s/ H. Kenneth Schroeder, Jr.*
                                    **H. KENNETH SCHROEDER, JR.**
                                    **United States Magistrate Judge**

15